IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VINCENT A. DAVIS, | Case No. 3:15-cv-00843-SI |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security | |
| Defendant. | |

Bruce W. Brewer, P.O. Box 421, West Linn, Oregon 97068. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hébert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jordan D. Goddard, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 Mailstop 221A, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Vincent Davis seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Supplemental

Security Income ("SSI") and Disability Insurance Benefits ("DIB"). For the following reasons,

the Commissioner's decision is REVERSED and this case is REMANDED for further

proceedings.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  **Plaintiff's Application**

Mr. Davis protectively filed an application for DIB and SSI on January 11, 2012, alleging disability beginning on June 30, 2008. AR 12. He alleges disability due to sclerosis, back pain, mysofisical pain, muscle spasms, and hip pain, stemming from an injury he received in a train

accident in 1996. AR 14, 231. Plaintiff was 30 years old on his alleged disability onset date. The

Commissioner denied his applications initially and upon reconsideration; thereafter, Plaintiff

requested a hearing before an Administrative Law Judge ("ALJ"). AR 119, 123, 131, 133. An

administrative hearing was held on August 1, 2013. AR 25. The ALJ found that Plaintiff has not

been under a disability from June 30, 2008, to the date of the ALJ's decision. AR 12. The

Appeals Council denied Mr. Davis's request for review, making the ALJ's decision the final

decision of the Commissioner. AR 1. Mr. Davis now seeks judicial review of that decision.

B.  **The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
      significant mental or physical duties done or intended to be done for pay
      or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
      such work, she is not disabled within the meaning of the Act. 20 C.F.R.
      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
      substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's
      regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
      impairment or combination of impairments is "severe" if it significantly
      limits the claimant's physical or mental ability to do basic work activities.

20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  **The ALJ's Decision**

The ALJ began his decision by noting that Plaintiff meets the insured status requirements

as of December 31, 2013, and that Plaintiff must establish disability on or before that date in

order to be entitled to DIB. AR 12. At step one, the ALJ determined that Plaintiff has not

engaged in substantial gainful activity since June 30, 2008. AR 14. At step two, the ALJ found

that Plaintiff's thoracolumbar dextroscoliosis is a severe impairment. AR 14. The ALJ noted that

Plaintiff twisted his back and broke his leg after a train hit Plaintiff in 1996. AR 14. At step

three, the ALJ found that Plaintiff's severe impairment does not meet or medically equal the

severity of Listing 1.04. AR 15. The ALJ then determined that Plaintiff has the RFC to "lift

and/or carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk about six

hours in an eight-hour workday, sit about six hours in an eight-hour workday, and occasionally

push and/or pull with the right lower extremity," and "occasionally climb, bend, and stoop, and

frequently crouch, crawl, and kneel." AR 15. The ALJ found that Plaintiff is capable of

performing past relevant work as a telephone solicitor, circuit board electronics assembler, fast

food worker, and security guard. AR 18. In light of this step four finding, the ALJ determined

that Plaintiff has not been under a disability from June 30, 2008. AR 19.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) rejecting Plaintiff's testimony; (B) improperly discrediting examining physician Dr. Donald Ramsthel's opinion; (C) improperly weighing the reviewing state agency physicians' opinions; and (D) improperly discrediting lay witness testimony.

### A.  Plaintiff's Credibility

Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony concerning his subjective pain and the limiting effects of his impairments. In finding Plaintiff not fully credible, the ALJ relied on (1) objective medical evidence; (2) inconsistency with activities of daily living; (3) Plaintiff's minimal history of medical treatment; and (4) Plaintiff's inconsistent reports concerning the train accident that caused his injury. AR 16-17.

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider of all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements

are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In weighing Plaintiff's credibility, the ALJ found that "[t]he medical evidence of record fails to establish objective findings that would support limitations greater than those outlined" in the RFC. AR 16. In the RFC, the ALJ determined that Plaintiff is capable of "a light level of physical exertion" with some limitations.[1] The ALJ also found that Plaintiff's claimed limitations were inconsistent with his activities of daily living and failure to seek medical treatment. The ALJ further found that Plaintiff lacked credibility because Plaintiff made inconsistent statements regarding the train accident.

### 1.    Objective Medical Evidence

Plaintiff argues that the ALJ erred in failing to explain how the medical evidence contradicts Plaintiff's alleged limitations. The ALJ must provide more than "vague allegations" by "point[ing] to specific facts in the record which demonstrate that [Plaintiff] is in less pain than [he] claims." *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2008). An ALJ's general findings are insufficient to uphold an adverse credibility finding. *See Dodril*, 12 F.3d at 918; *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (stating that "the ALJ must specifically identify

---

[1] The ALJ limited Plaintiff's RFC to occasional bending because Plaintiff's wife reported Plaintiff needs help tying his shoes. AR 16.

the testimony she or he finds not to be credible and must explain what evidence undermines the testimony").

The ALJ cited to specific observations and findings in the medical record tending to show that Plaintiff's range of motion exceeded his alleged limitations. The ALJ noted that Plaintiff had only mild scoliosis, only mild leg length discrepancy, most joint examinations within normal limits, the ability to get onto the examination table, the ability to rise on his heels and toes, and the ability to perform a full squat. AR 16. This is sufficiently specific. *See Batson*, 359 F.3d at 1196 (upholding an ALJ's adverse credibility finding that relied in part on a physician's observation that the plaintiff "removed his sweatshirt before the exam in a way that accommodated a greater cervical range of motion than what [he] had claimed."). This evidence contradicted Plaintiff's claim that his impairments interfere with his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks.

In reviewing the objective medical evidence, however, the ALJ failed to consider Plaintiff's only MRI, which showed significant arthritis around the bones of the spine, ligament tears around the discs, moderate degenerative disc disease, and disc bulging. AR 350. As a result of the MRI, Plaintiff received a diagnosis of moderately severe lumbar spinal stenosis[2] and a referral to a neurosurgeon for further treatment. AR 351. Although the ALJ is not required to discuss every piece of evidence, he "must explain why significant probative evidence has been rejected." *Stark v. Shalala*, 886 F.Supp. 733, 735 (D. Or. 1995) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir.1984) (quotations omitted). Plaintiff's MRI was significant, probative evidence that could not be ignored without explanation.

---

[2] Listing 1.04C is lumbar spinal stenosis.

## 2.  Activities of Daily Living

The ALJ also relied on Plaintiff's reported ability to do his activities of daily living.[3]
AR 16. Daily activities can form the basis of an adverse credibility finding when the claimant's
activities either contradict his or her other testimony or meet the threshold for transferable work
skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. For a
credibility analysis, the ALJ "need not consider whether a claimant's daily activities are
equivalent to full-time work; it is sufficient that the claimant's activities 'contradict claims of a
totally debilitating impairment.'" *Whittenberg v. Astrue*, 2012 WL 3922151 at * 4 (D. Or.
Aug. 20, 2012) (quoting *Molina*, 674 F.3d at 1113); *see also Denton v. Astrue*, 2012
WL 4210508 at * 6 (D. Or. Sept. 19, 2012) ("While [claimant's] activities of daily living do not
necessarily rise to the level of transferable work skills, they do contradict his testimony regarding
the severity of his limitations."). A claimant, however, need not be utterly incapacitated to
receive disability benefits, and sporadic completion of minimal activities is insufficient to
support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001);
*see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to

---

[3] The ALJ cites to Dr. Ramshel's report stating that Plaintiff can do his ADLs, and not to
the record. The record shows that Plaintiff can do household chores if he rests in between tasks
and that he takes care of his children, but he is afraid to go outside alone because he sometimes
loses sensation in his right leg and needs help getting up after falling. AR 239, 244. Plaintiff
testified that his issues with his right leg cause him to fall two to three times a day. AR 34.
Similarly, Plaintiff's wife stated that Plaintiff has a back spasm every three to four hours, lasting
anywhere between three and ten minutes. AR 270. Plaintiff testified that once every two or three
hours he takes the stairs from his third floor apartment, although two or three days a month his
pain prevents him from taking the stairs at all. AR 41-42. Plaintiff will lie down on his stomach
frequently during the day to relieve the pressure on his back. AR 43. Plaintiff must rest five to
seven times every day to relieve the pain in his back and hip. AR 246. Plaintiff's back spasms
sometimes prevent him from sleeping. AR 239. Plaintiff does report playing disc golf once or
twice a month. AR 242. Plaintiff's wife reported that Plaintiff can only walk a quarter of a mile
and then must rest for two hours, and must stand or squat every fifteen minutes if he is sitting for
a long period of time. AR 268-69.

be inconsistent with the claimant's claimed limitations to be relevant to his or her credibility). Furthermore, the ALJ must make "specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Orn*, 494 F.3d at 639.

The ALJ did not point to any specific activity that contradicts Plaintiff's claimed limitations, only that Plaintiff reported to Dr. Ramsthel that Plaintiff "can do his activities of daily living." AR 16. This general finding does not explain how Plaintiff's activities contradict specific claimed limitations, and therefore is not a clear and convincing reason to discredit Plaintiff's testimony. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (stating "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.") (quoting *Smolen*, 80 F.3d at 1281) (alterations in original).

### 3. Lack of Medical Treatment

The ALJ further relied on Plaintiff's inconsistent medical treatment history in discrediting Plaintiff. AR 16-17. An ALJ "may properly rely on unexplained or inadequately explained failure to seek treatment." *Molina*, 674 F. 3d at 1113. The ALJ stated that although Plaintiff "testified that he only received health insurance a few months prior to the hearing, there is also indication that the claimant's symptoms were so severe that he required treatment or care in an emergency room."[4] AR 17. This fact purporting to discredit Plaintiff, however, appears consistent with Plaintiff's explanation that he did not seek regular treatment because he could not afford it. Plaintiff stated at the hearing that he recently received health insurance, but cannot afford to pay the co-pay on top of the cost of health insurance. AR 39-40. Consequently, the ALJ

---

[4] The ALJ does not cite to the record, but Plaintiff's Development Summary Worksheet states that Plaintiff went to Tuality Urgent Care for back spasms on June 11, 2012. AR 348.

erred in relying on Plaintiff's sparse medical history to discredit the Plaintiff. *See Orn,* 495 F.3d at 638 (stating that "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." (citation omitted)).

### 4.  Inconsistent Statements

Finally, the ALJ found that Plaintiff's inconsistent reports concerning the train accident that caused his injury undermined "the overall credibility of [Plaintiff's] allegations." AR 17. The ALJ noted that at the time Plaintiff was treated in 1996, he stated he had been hit while attempting to jump on the train, while later during his hospitalization he stated he was hit while attempting to jump in front of the train, and then in 2009 he reported that he had been hit by a train when he was trying to jump out of its way. AR 17. The Court notes that ALJs may no longer make this type of overarching credibility assessment because of the change to the rules governing ALJs the Social Security Administration made in SSR 16-3p.[5] The ALJ here made his determination before this new rule was effective. The Court need not determine, however, whether this rule has retroactive effect, because even assuming it does not, the Court does not find this to be a clear and convincing reason to discredit Plaintiff.

Inconsistencies regarding precisely how Plaintiff was hit by the train do not discredit his symptom testimony. Plaintiff's testimony about his accident is not "inconsistent with his claim of pain," and, in fact, is the likely source of his pain. *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989); *See also Smolen*, 80 F.3d at 1284 (stating that the ALJ may consider "prior inconsistent statements concerning the *symptoms*" in evaluating a plaintiff's credibility (emphasis added)). Additionally, medical records concerning the train accident state that Plaintiff

---

[5] SSRs are binding on the Social Security Administration, but do not have the force of law and are not binding on courts. *See Holohan*, 246 F.3d at 1202 n.1. They are, however, entitled to some deference because they represent the Commissioner's interpretation of the agency's regulations. *Id.*

"had a positive loss of consciousness[,] was amnestic to the event," and suffered a closed head injury, explaining why Plaintiff may not remember the details immediately preceding his accident. AR 274-75. Thus, the ALJ erred in relying on Plaintiff's negligibly inconsistent statements that did not contradict Plaintiff's pain testimony to discredit Plaintiff.

The ALJ failed to provide a clear and convincing reason to discount Plaintiff's credibility.

B.  **Dr. Ramsthel's opinion**

Dr. Ramsthel performed consultative examinations on Plaintiff in 2010 and 2012. AR 319, 337. In 2010, Dr. Ramsthel summarized his review of Plaintiff's medical records, and tested Plaintiff's range of motion in Plaintiff's cervical spine, dorsolumbar spine, hip joints, knee joints, ankle joints, straight leg raising, shoulder joints, elbow joints, wrist joints, and finger joints. AR 319-22. Plaintiff's range of motion was normal except for his positive test during the straight leg raise in the supine position. AR 321. Dr. Ramsthel also measured Plaintiff's legs, finding that the right leg measured three quarters of an inch shorter than the left. AR 322. Dr. Ramsthel opined that Plaintiff could stand or walk between one and five hours and sit between three and five hours in an eight-hour work day. AR 322.

In 2012, Dr. Ramsthel reviewed Plaintiff's medical records and performed the same tests. AR 337-340. Plaintiff demonstrated decreased range of motion in his dorsolumbar spine and hip joints, and again tested positive on the straight leg test from the supine position. AR 340. Dr. Ramsthel again measured Plaintiff's legs but found they were equal in length and that Plaintiff's dextroscoliosis caused the left hip and should to be higher than the right. AR 341. Dr. Ramsthel opined that Plaintiff could stand or walk between two and three hours and sit for four hours out of an eight-hour work day. AR 341.

Plaintiff argues that the ALJ failed to provide specific, legitimate reasons for discrediting examining physician Dr. Ramsthel's opinion. The ALJ gave little weight to consultative examiner Dr. Ramsthel because Dr. Ramsthel's assessments of Plaintiff's limitations were "not entirely consistent with the objective findings noted on his examination," and because Dr. Ramsthel based his opinion on Plaintiff's subjective complaints. AR 17.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan,* 246 F.3d at 1202. If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another

physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

The ALJ found that Dr. Ramsthel's opinion was inconsistent with Dr. Ramsthel's reports, which "noted no neurological deficits, and reduced range of motion only on the later exam." AR 17. Conflict between a physician's opinion and his own treatment notes may justify an ALJ's decision not to give that physician controlling weight. *See Holohan*, 246 F.3d at 1205. The physician's opinion, however, "must be read in context of the overall diagnostic picture" the physician draws. *Id.*

When viewed in context, the record shows that Dr. Ramsthel observed Plaintiff favoring his right leg, as well as "quite a bit of pain behavior with the right hip and low back," and that Plaintiff "moves slowly and is careful about his movements." AR 337-41. During Dr. Ramsthel's exams in 2010 and 2012, Plaintiff had a positive straight leg raise in the supine position due to back pain. In the 2012 exam, Plaintiff was tender to palpation over the low back, and had "obvious thoracolumbar dextroscoliosis." *Id.* While Plaintiff demonstrated normal range of

motion in his joints the 2010 exam, the 2012 exam showed that Plaintiff experiences a decreased range of motion in his dorsolumbar spine or lumbar spine, and in his hip joints. AR 339-40. Further, Plaintiff's left hip and shoulder are higher than his right due to his scoliosis. AR 341. When Dr. Ramsthel's findings are read in context with the rest of his treatment notes, they are not inconsistent with his opinion concerning Plaintiff's limitations, and the ALJ erred in discrediting Dr. Ramsthel for this reason.

The ALJ additionally concluded that because the objective medical evidence did not support Dr. Ramsthel's opinion, Dr. Ramsthel must have based his conclusions on Plaintiff's subjective complaints. AR 17-18. An ALJ may discount a physician's opinion "if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. Dr. Ramsthel reviewed Plaintiff's medical records, made personal observations of Plaintiff, and performed two physical exams. The ALJ's inference that Dr. Ramsthel based his opinion on Plaintiff's self-report is questionable; however, as the Court previously concluded that the ALJ did not properly discredit Plaintiff's testimony, this is not a legitimate reason for discrediting Dr. Ramsthel's testimony.

In sum, the ALJ improperly relied on inconsistencies with treatment notes and reliance on Plaintiff's testimony to discredit Dr. Ramsthel. Accordingly, the Court finds that the ALJ's decision to give Dr. Ramsthel's opinion little weight is not supported by substantial evidence in the record.

## C.  Reviewing state agency physicians' opinions

Plaintiff claims that the ALJ erred in giving "some weight" to the opinions of state reviewing physicians, Dr. Neal Berner and Dr. Leslie Arnold. Specifically, Plaintiff points to the fact that both of the reviewing state physicians opined that Plaintiff could stand for only two hours in an eight-hour workday (AR 69, 93), while the ALJ found that Plaintiff is capable of

standing six hours in an eight-hour day (AR 15). The ALJ noted that the reviewing state

physicians are considered experts in their field and that the opinions of Drs. Berner and Arnold

were well supported by the medical evidence, but found that the restriction of standing and

walking for only two hours was inconsistent with the objective medical evidence.

"The Commissioner may reject the opinion of a non-examining physician by reference to

specific evidence in the medical record." *Sousa v. Callahan,* 143 F.3d 1240, 1244 (9th

Cir. 1998). In weighing the opinions of the non-examining physicians, the ALJ found their

physical limitation assessments to be inconsistent with Plaintiff's normal neurological findings

and only "mild finds on diagnostic images." AR 17. Because the ALJ ignored Plaintff's MRI,

which had more significant findings, this determination by the ALJ is not supported by

substantial evidence in the record.

Even if the ALJ did properly discount Drs. Berner and Arnold's opinions that Plaintiff

could not stand for more than two hours in a eight-hour workday, the issue would still remain of

whether the ALJ's finding that Plaintiff can stand or walk for up to *six* hours in an eight-hour

work day is supported by substantial evidence in the record. "Although the burden of proof lies

with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to

support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). In determining a

plaintiff's RFC limitations, an ALJ may not rely on his own unsupported interpretation of the

medical evidence. *See Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) ( finding

that "the ALJ impermissibly relied on his own medical opinions as to the limitations presented");

*Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was

simply not qualified to interpret raw medical data in functional terms and no medical opinion

supported the determination."); *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) (stating that

"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

The ALJ gave little weight to the examining physician and expressly disregarded the reviewing physician's assessment that Plaintiff could only stand for two hours in an eight-hour work day. The ALJ did not address the opinion of a third state agency physician who reviewed Plaintiff's records in 2010 and who also found that Plaintiff was limited to two hours of standing. AR 57. In examining Plaintiff's activities of daily living, the ALJ made only a general statement that Plaintiff can do them. AR 16. The ALJ considered and purportedly placed significant weight on the objective medical evidence throughout the decision,[6] but failed to explain how it, or any other evidence, supports the ALJ's RFC finding that Plaintiff can stand or walk for six hours, contrary to the opinion of every physician. The Court concludes that the ALJ's determination that Plaintiff can stand or walk for up to six hours in an eight-hour workday is not supported by substantial evidence.

**D.  Testimony of Patty Davis, Plaintiff's wife**

Plaintiff argues that the ALJ failed to offer a germane reason for discrediting the testimony of Patty Davis, Plaintiff's wife. Ms. Davis reported that Plaintiff cannot lift, stand for long periods, sit for long periods, and can only do very little bending and walking. AR 18. The ALJ determined that Ms. Davis's testimony was of "little probative value" because the ALJ concluded that the medical evidence does not support these limitations and Ms. Davis based her reports on Plaintiff's self-reported symptoms. AR 18.

---

[6] In fact, the ALJ relies on the "objective medical evidence" to discredit in part almost every other kind of evidence presented, including testimony from Plaintiff, Dr. Ramsthel, the state agency physicians, and the lay witness.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). Where an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ found that Ms. Davis's testimony "was based largely on the self-report of the claimant to this wife." The Ninth Circuit has explained that "[a]lthough eyewitnesses have to rely to some extent on communications with the claimant in ascertaining whether she is

disabled . . . we have held that friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition." *Dodrill*, 12 F.3d at 918-19. The Third Party Function report completed by Ms. Davis indicates that she spends eight to twelve hours with Plaintiff a day, walks with Plaintiff, observes that he needs to stop and rest when walking or on the stairs, helps Plaintiff tie his shoes, helps Plaintiff up from the floor when he has back spasms, and that when he has back spasms his back swells up and she "can see his whole lower back spasm." AR 264, 270, 338. This indicates that Ms. Davis has had a significant opportunity to make personal observations of Plaintiff and his alleged impairments.

When the record indicates that the witness based his or her testimony on personal observation, it is error for the ALJ to discredit the witness for relying on a plaintiff's self-reported symptoms. *See Schow v. Astrue,* 272 F. App'x 647, 653 (9th Cir. 2008) (finding that the ALJ erred in rejecting lay witness testimony for being based on the plaintiff's self-report of symptoms when the record indicated the witnesses based their comments on their own observations.). Additionally, the Court has found that the ALJ improperly discredited Plaintiff's testimony, so even if the evidence from Ms. Davis was based in part on Plaintiff's self-report, it would not be a germane reason to discount Ms. Davis's credibility.

In considering an opinion from a non-medical source, like a spouse, it is appropriate for an ALJ to consider whether the evidence is consistent with other evidence in the record. SSR 06-03p. The ALJ found that the testimony of Plaintiff's wife was not consistent with the medical evidence in the record. Although the ALJ does not cite to the record, he references his previous discussions of the medical record. This includes Plaintiff's ability during medical exams to rise on his heels and toes, perform a full squat, and move from a chair onto the examination table without difficulty. AR 16, 339. Inconsistency with medical evidence is a germane reason to

discredit lay witness testimony. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Although the medical evidence may be subject to more than one interpretation, if the ALJ's interpretation is rational, it must be upheld. *See Burch*, 400 F.3d at 679; *Batson*, 359 F.3d at 1193. It was rational for the ALJ to conclude that Plaintiff's performance in medical exams contradicted Ms. Davis's testimony regarding Plaintiff's limitations. Accordingly, the ALJ's decision not to fully credit the limitations opined to by Ms. Davis is upheld.

E.    **Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential

factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

The ALJ failed to provide legally sufficient reasons for discrediting Plaintiff and Drs. Ramsthel, Berner, and Arnold. Further, the ALJ's determination that Plaintiff can stand or walk for six hours is contrary to the opinion of every physician on record and is not supported by substantial evidence in the record. The Court finds that outstanding issues remain regarding Plaintiff's appropriate RFC and whether Plaintiff can perform past relevant work or other work that exists in sufficient numbers in the national economy. Thus, remand for immediate award of benefits is not appropriate. Upon remand, the ALJ shall appropriately consider Plaintiff's

testimony, Drs. Ramsthel, Berner, and Arnold's opinions, and formulate a new RFC.

Accordingly, this matter is remanded for further proceedings.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for further

proceedings as set forth herein.

**IT IS SO ORDERED**.

DATED this 12th day of August, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge